CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
JUL 06 2007
JOHN F. CORCORAN, CLERK
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RHONDA YVETTE SPAIN, | CASE NO. 7:06CV00707 |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| BARBARA J. WHEELER, *et al.*, | By: B. WAUGH CRIGLER |
| Defendant. | U.S. MAGISTRATE JUDGE |

Before this court is defendants' April 11, 2007 Motion for Summary Judgment. The case has been transferred to the undersigned under the authority of 28 U.S.C. § 636(c)(2), the parties having consented to the dispositive jurisdiction of a United States Magistrate Judge. For the reasons that follow, an order will enter GRANTING defendants' Motion for Summary Judgment as to all counts in the plaintiff's complaint, and DISMISSING this action from the docket of the court.

**PARTIES AND CLAIMS**

Rhonda Yvette Spain ("Spain" or "plaintiff") is an inmate of the Virginia Department of Corrections ("VDOC"), incarcerated at Fluvanna Correctional Center for Women ("FCCW"). Spain has brought this action, under 42 U.S.C. § 1983, against Ms. Barbara J. Wheeler ("Wheeler"), Warden of FCCW, Mr. R. Collins ("Collins"), Food Service Director of FCCW, and Ms. P. A. Baskerville ("Baskerville"), Assistant Warden of FCCW (collectively referred to as "defendants"). Spain alleges that the Food Service Department at FCCW failed to provide her with the medical diet ordered by the Medical Department at FCCW, and accordingly was deliberately indifferent to her serious medical needs, in violation of her Eighth Amendment

rights.

## LEGAL PRINCIPLES

### Summary Judgment Standard

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving part[ies are] entitled to judgment as a matter of law." FED. R. Civ. P. 56(c); *Gresham v. Lumbermen's Mut. Cas. Co.*, 404 F.3d 253, 259-60 (4th Cir. 2005). The moving party bears the initial burden of proof that there is an absence of any genuine issues of material fact. *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). An issue of fact is "material" if it might affect the outcome of the case, and an issue of fact is "genuine" when it could cause a rational trier of fact to find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the moving party is entitled to summary judgment as a matter of law when the nonmoving party has not established the existence of an essential element to that party's case. *Celotex*, 477 U.S. at 323. In such a case, there are no genuine issues of material fact because there has been a complete failure to establish an essential element to the nonmoving party's case. *Id.* When determining whether there is an issue for trial, the court must view any inferences drawn from the underlying facts in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

### Deliberate Indifference

The Eighth Amendment expressly prohibits the infliction of "cruel and unusual

punishments." U.S. Const. Amend. VIII. In that connection, the Eighth Amendment not only proscribes excessive sentences, it also protects inmates from inhumane treatment and conditions. *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). To succeed on an Eighth Amendment claim, a plaintiff must show that: (1) he has a serious medical need, and (2) prison officials acted with "deliberate indifference" to that need. *Johnson*, 145 F.3d at 167. A serious medical need is a medical need that is "sufficiently serious . . . to require medical treatment," or is so obvious that even a layperson would recognize the need for a doctor's attention. *Brice v. Va. Beach Correctional Ctr.*, 58 F.3d 101, 104 (4th Cir.1995); *accord. Albritton v. Edwards*, 2005 WL 2777284, *5 (W.D. Va. 2005). Actions that amount to "deliberate indifference" are those which are "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness," and must satisfy both an objective and subjective standard. *Miltier v. Boern*, 896 F.2d 848, 851 (4th Cir. 1990). First, the deprivations objectively must be sufficiently serious, and second, the prison official taking the action subjectively must know of, and disregard an excessive risk to the inmate's health or safety[1]. *Farmer v. Brennan*, 511 U.S. 825, 834-837 (1994). In order for a plaintiff to establish that a supervisor was deliberately indifferent, she must prove that "(1) the supervisory defendants failed promptly to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." *Miltier*, 896 F.2d at 854.

---

[1] This second, subjective component is routinely equated to recklessness. *Farmer*, 511 U.S. at 836.

3

Mere negligence or medical malpractice, that is treatment which falls below the applicable state law standard of reasonable care, does not rise to the level of an Eighth Amendment violation. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). Thus, prison officials cannot be held liable under § 1983 simply by failing to exercise ordinary or reasonable care which, if exercised, likely would have averted the harm to the plaintiff. *Farmer*, 511 U.S. at 844-845. In other words, the mere exercise of medical judgment are not subject to judicial review under § 1983. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). Furthermore, correctional personnel may rely on the opinions or judgments of the medical staff as to the proper course of treatment for an inmate. *Miltier, supra.*; *Smith v. Berry*, 985 F.2d 180, 184 (4th Cir. 1993). Finally, mere disagreements between an inmate and a physician over the inmate's proper medical care do not rise to constitutional proportions under 42 U.S.C. § 1983 unless exceptional circumstances have been demonstrated. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

**FACTUAL BACKGROUND**

According to Division Operating Procedure ("DOP") 713, Therapeutic Diets, institutional physicians may issue orders for inmate therapeutic diets, and then the signed medical order is forwarded to the institution's Food Service Department for implementation. (Wheeler Aff. ¶ 6.) If that diet does not fall within those approved therapeutic diets under DOP 713, the Office of Health Services ("OHS") must approve the special diet. *Id.* If the OHS approves the diet, the Virginia Department of Corrections ("VDOC") dietician will develop an appropriate special menu, to be returned to OHS for approval, and in turn, implemented by the Food Service Department. (Stephens Aff. ¶ 4.)

In response to plaintiff's complaints of not tolerating processed foods and of food

4

allergies, on April 5, 2006, N. Mayer, M.D. ("Mayer"), the Medical Director at FCCW ordered a low-fat, high-fiber diet with no processed meat and no beans. (Collins Aff., Enclosure A, 1.) On April 26, 2006, Donald Remaly, M.D. ("Remaly") another physician at FCCW, affirmed this dietary order, and further added a restriction on eggs, due to plaintiff's allergy. (Collins Aff., Enclosure A, 2.) In response to further complaints from Spain, Mayer performed blood tests on December 5, 2006, and determined that Spain also was allergic to bananas, oranges, and rye. (Collins Aff., Enclosure A, 3.) However, a diet free of these foods was not on the list of approved diets under DOP 713. Consequently, Mayer forwarded the records to H. Stephens, M.D. ("Stephens"), Chief Physician for the VDOC, Office of Health Services, for his review and determination of an appropriate menu for plaintiff. On March 6, 2007, Stephens reviewed plaintiff's record, and found that a low-fat, low-cholesterol diet with no processed meats or foods, no beans, high fiber, and no eggs, oranges, bananas, or rye due to allergies was appropriate. (Stephens Aff. ¶ 5.) Immediately after, however, Stephens reconsidered and examined the nature of Spain's intestinal surgery, and concluded that plaintiff's surgery did not prevent her from eating processed meats or foods, and, thus he rescinded approval for the restriction thereon. *Id.* On March 14, 2007, an "Offender Diet Order" was executed and sent to FCCW Food Service by Mayer on behalf of Spain restricting fat, cholesterol, eggs, beans, oranges, and rye, and requiring high fiber. (Collins Aff., Enclosure E, 1.)

**CONTENTIONS OF THE PARTIES**

Spain has alleged in her November 29, 2006 complaint that, as a result of surgery she underwent in or about 1992 which removed portions of her intestines, she now is unable to properly digest the processed foods served her at FCCW. (*E.g.* Dkt. No. 70.) She claims that, as

5

a result of eating processed foods, she has loose bowels, causing discomfort, pain, and embarrassment. (*Id.*) Plaintiff also has asserted that, as a result of the defendants' conduct, she and other inmates may suffer future health problems, such as requiring colostomy bags, upon being released from custody of the Bureau of Prisons. (*Id.*) Spain has submitted numerous letters claiming that she is not receiving the appropriate medical diet, and essentially disagreeing with Stephens' assessment, repeating a theme that her "system can't consume" processed foods. (*See* Dkt. Nos. 34, 35.) However, despite Spain's alleged inability to consume processed foods, Z. Roadcap, Commissary Manager at FCCW, submitted an affidavit revealing that, since the Fall of 2006, Spain has purchased Oreo cookies, honey buns, Snickers bars, Hershey's bars, Ramen noodles, Andy Capp Hot Fries, Reese's peanut butter cups, Coca Cola, and other processed foods. (Roadcap Aff. ¶ 4.) Plaintiff does not dispute that she bought and ate these processed foods.

Spain complains that defendant Collins, the Food Service Director at FCCW, did not comply with Mayer's dietary order of March 6, 2007. (*See* Dkt. No. 35.) However, it is unchallenged that the dietary order of March 6, 2007 was superseded by the dietary order of March 14, 2007. (Collins Aff., Enclosure E, 1.) That March 14 order was received by Collins in FCCW Food Services *via* facsimile on March 19, 2007, as indicated by the time stamp on the document. *Id.* Both Collins and Wheeler have submitted respective affidavits revealing that FCCW Food Services is complying with the latest physician-approved diet order. (Collins Aff. ¶ 19; Wheeler Aff. ¶ 12.)

Plaintiff has not disputed that the March 6, 2007 order was superseded. Often without distinguishing between the March 6 and March 14 dietary orders, and without pointing to any

6

specific facts in support, she simply offers the vague assertion that defendant Collins failed to provide her medically-ordered diet. (*See* Dkt. Nos. 70, 71.) In addition, and again despite her acknowledgment that the March 14, 20007 essentially was implemented, plaintiff has offered the equally vague assertion that Stephens' review and modification was unjust and inappropriate. (*Id.*)

It also appears undisputed in the record before the court that inmates at FCCW are required to present an identification card in order to receive special meal trays. According to Collins, plaintiff requested her special diet tray only once between March 12 and March 25, 2007, and six times between March 26 and April 1, 2007. (Collins Aff. ¶ 21.) Spain does not contradict this evidence, she only seeks to excuse her noncompliance on the grounds that this process requires that she wait in line longer for her special tray, and that by the time she received her special tray, "whole wings have passed her by."[2] (Dkt. No. 57.) Spain admits that, instead of waiting, she often selects a regular tray and, then, trades food with other inmates. (Dkt. No. 54.) Spain further acknowledges that she has received substitutes for the items to which she is allergic, even though she does not believe those substitutes were "proper." (Dkt. No. 60; Dkt. No. 68 (Plaintiff exclaims, ". . . how do you eat cheese on cornbread?")).

## FINDINGS AND CONCLUSIONS

The undersigned finds that Spain has presented evidence representing simply a personal disagreement with the diet which has been ordered for her. Consequently, and as a matter of law, her § 1983 claims against Wheeler, Collins, or Baskerville for failure to provide a diet free of

---

[2] It is unclear whether plaintiff meant entire wings of the building inmates passed her by, or whether whole wings of chicken have passed her by. Neither interpretation impacts the outcome of this action.

processed foods do not rise to constitutional dimensions. Plaintiff has failed to present any evidence to support her vague allegations that she is not receiving the appropriate medical diet. Certainly there is no medical evidence in the record suggesting the diet ordered is deliberately indifferent to her serious medical needs. Moreover, she has failed to contradict the evidence presented that she has declined to present her identification card in order to receive her special diet tray, or that she is purchasing from the commissary the very kinds of processed foods she claims to have been excluded from her diet.

Because plaintiff has failed to present *prima facie* evidence of deliberate indifference by the medical personnel in prescribing and offering her a special diet, her claims against the non-medical personnel at FCCW, in their individual capacity, cannot be sustained because the undisputed evidence is that they did nothing more than rely on the orders of the medical staff in declining to provide her with the kind of diet she wanted.

Furthermore, Spain's assertions on behalf of other inmates must fall primarily because, as a *pro se* litigant, she is not permitted to assert any right which is not personal to her, but also because her claims are premised solely upon her personal disagreement with her food service. *Inmates v. Owens*, 561 F.2d 560, 562-563 (4th Cir. 1977).

Summary judgment also will enter on plaintiff's claims against the defendants Wheeler, Collins, and Baskerville in their official capacities as Warden, Assistant Warden, and Director of Food Services. Again, plaintiff has failed to produce *prima facie* evidence of a §1983 violation, but also these defendants, sued in these capacities, are not persons under § 1983. *See Will v.*

8

*Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989).[3]

**SUMMARY**

For the foregoing reasons, an order will GRANTING defendants' Motion for Summary Judgment on all claims and DISMISSING this action from the docket of the court.

The Clerk is directed to send a certified copy of this Memorandum Opinion to the plaintiff and all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

7/6/07
Date

---

[3]The court need not reach a determination of the affirmative defense of qualified immunity asserted by Wheeler, Collins and Baskerville as plaintiff's evidence is insufficient, as a matter of law, to demonstrate a §1983 violation.

9